[S. F. No. 1741.   Department Two. — February 27, 1901.]

## FRED FRANTZ and J. B. ENDERT, Executors, etc., Appellants, v. GEORGE K. PORTER, LOUIS SLESSINGER, and JOSEPH KAHN, Respondents.

Estates of Deceased Persons — Action for Money Deposited with Firm — Gift of Check by Testator to Member of Firm — Support of Verdict. — In an action by executors to recover money deposited by the testator with a firm, where it appeared that the testator, who had disposed of a large estate by will, gave a check for part of the money deposited, which was part of the estate devised, to one of the members of the firm, for the benefit of his children, and the evidence was uncontradicted that the testator was of perfectly sound mind when he gave the check, and until his death, and there was no evidence of fraud or undue influence in any way impeaching the action or the motives of the one to whom the check was given, the verdict of the jury, in favor of the gift, will not be disturbed upon appeal.

Id. — Personal Friendship — Fiduciary Relation — Presumption. — Where the relation between the testator and the donee of the check was nothing more than that of warm personal friendship, there can be no presumption that the relation was fiduciary, or that there was any undue influence, or that the check was given for the use of the drawer; and where the evidence is sufficient to overcome any such presumption if it existed, the verdict of the jury cannot be disturbed on account of such presumption.

Id. — Fiduciary Relation a Question of Law — Instruction. — Whether the facts showed such a fiduciary relation as would cast the burden upon the donee to overcome a presumption of fraud and undue influence, is a question of law, exclusively within the province of the
CXXXII. Cal. — 4

court, and not a question of fact for the jury, and where the relation proved is not fiduciary, the court may properly so instruct the jury.

ID. — INSTRUCTIONS — GIFT — DELIVERY — BURDEN OF PROOF. — Where the court properly instructed the jury as to the burden of proof being upon the defendant, who received the gift, to show that the gift of the check was in fact made and intended by the testator, by evidence in addition to the signing and delivery of the check, an instruction which, standing alone, might have conveyed the impression that signing and delivering the check completed the gift, is not misleading.

ID. — BURDEN OF PROOF AS TO FRAUD AND UNDUE INFLUENCE. — Where the evidence did not disclose the existence of a fiduciary relation between the parties, it was proper to instruct the jury that the burden of proof as to fraud and undue influence 'in obtaining the gift rested upon the executors plaintiff.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Philip G. Galpin, for Appellants.

Rothchild & Ach, for Respondents.

THE COURT.—This is an action to recover $26,160.92, alleged to have been deposited with defendants by plaintiffs' testate, Horace Gasquet. Defendants answered, that they had for two years preceding the death of Mr. Gasquet been acting as his banker, under an agreement "to receive deposits from him, to pay out moneys to him or upon his order, and to allow him interest upon deposits at the rate of four per cent per annum"; that prior to his death defendants had paid out to him or his order all sums by him deposited or to which he was entitled, except $1,185.38 (including therein $24.46 interest), which amount defendants admitted was due the estate of deceased on August 7, 1896, at the time demand was made on them by plaintiffs, and that defendants then tendered to plaintiffs said sum, etc. The cause was tried by a jury, and plaintiffs had a verdict for the amount tendered by defendants, and judgment was entered accordingly.

Plaintiffs appeal from the order denying their motion for a new trial.

It appears from the evidence that defendants were partners

doing business as Porter, Slessinger, & Co., at San Francisco, and had been in business as such for over twenty years; that for some fourteen years they had acted as the bankers for deceased, allowing him four per cent interest on balances; during this time deceased resided in Oregon, where he was engaged in merchandising, mining, contracting, and other occupations, and purchased goods from defendants; defendant Kahn was a married man, residing with his wife and two children at San Francisco; deceased and Kahn were Frenchmen, the former being unmarried, and without any known relatives in this country. The evidence shows an intimate relation and close friendship, long continued, between deceased and Kahn, and that Kahn had been called upon personally to perform, and did perform, for deceased various services of a personal and friendly nature; on January 13, 1896, the firm was indebted to deceased in the sum of $26,160.92; on that date Kahn received a letter from deceased, stating that he was very sick, and requesting him to call at St. Mary's Hospital, San Francisco, where deceased was under medical treatment; Kahn went to him at once, and continued to visit him daily until the 21st, when he died; his attending and consulting physician testified that "he was very weak in body, but his mind was clear, —he was of sound mind" until his death; Kahn remained all day with deceased on the 13th and returned on the 14th. Kahn testified: "On the afternoon of the 14th he said that he wanted to change his will, and wanted me to bring a lawyer to him. Said he made a will in Crescent City, but he wanted to leave me something. I said, 'What for?' He said, 'I want to leave you something.' I tried to talk him out of it, but he said, 'No, I insist upon it,' and I said, 'All right, I will bring you some attorney to-morrow.' He insisted, and I called on Rothchild and Ach, and left a note asking them to go to St. Mary's Hospital to draw a will, and that I would send a carriage for them. I went to the hospital on the 15th, but neither Mr. Rothchild nor Mr. Ach could go. Gasquet said, 'Where are the attorneys?' I said they would come in the afternoon. He said, 'Never mind about the lawyers.' He said, 'You go and write out a check for the money I have at Porter, Slessinger & Co.'s, and I will give it to you for your children.' I talked with him a little while, and he said, 'Just do as I tell you.'" Kahn went back to Porter, Slessinger & Co. and spoke to Mr. Porter about it; he also spoke to the book-

keeper, and told him to look at the account and tell him the balance due deceased, and explained why he wanted to know, and was told by the book-keeper that the amount was between twenty-five thousand and twenty-six thousand dollars. Kahn then drew a check at the office of the firm for twenty-five thousand dollars, and showed it to the book-keeper and Mr. Porter, and witness thinks he showed it to Mr. Slessinger also. Kahn took it to the hospital on the 15th, and deceased signed it. Kahn testified: "He signed it on the 15th of January and handed it back to me. He said, 'I give you this for your children. Give them a musical education or what you like with it. Let the boy buy all the postage-stamps he wants.' I accepted the check at the time." The check is in evidence, and Kahn testified that he took it back to the firm, showed it to Porter and the book-keeper, "and told the book-keeper to give him credit on the books for twenty-five thousand dollars, to Joseph Kahn, trustee. I gave him the check." It was indorsed by Kahn, and stamped "Paid, January 15, 1896," with the stamp of the firm, and the books of the firm showed a charge against Horace Gasquet for the amount, of that date, and a credit to Kahn. Kahn testified that he told his wife that evening about the gift, and also told Levi Strauss. There is evidence that Mr. Gasquet was very ill with cancer of the stomach, and that he said "that he never expected to get up," and Kahn testified that "when the check was being signed some one knocked at the door, and I said, 'Come in.' It was the nurse. He did not come in, but excused himself and went away." There was no one present, except Kahn, when the check was signed and delivered. A large number of letters were introduced, showing the correspondence between Kahn and Gasquet during several years, from which it appears that they were very close and intimate friends, and this is confirmed by the evidence of Gasquet's anxiety to have Kahn near him, and as much of the time as possible, while he was suffering from his mortal illness at the hospital. Deceased left a will, that was executed at Crescent City on January 10, 1896, when on his way to San Francisco for medical treatment, in which he made his brother, a colonel in the army of France, his sole devisee, and it appeared that the estate was of the value of one hundred and two thousand dollars, including the claim here in question.

Appellants say, in their brief, that the evidence of plaintiffs

in rebuttal was largely circumstantial, but that it tended to show the improbability of such a large and unusual gift; that it was shown that Gasquet had other acquaintances whose relations with him were equally intimate, and less of a business character than his relations with Kahn; that Gasquet was very weak from the day of his arrival and took little or no nourishment; that Kahn told no one of having received the check, except the members of the firm and the book-keeper; that there were persons in the hospital who might have been, but were not, called to witness the signing of the check; that the gift was at variance with the desire of Gasquet as expressed in his will. These and some other circumstances of like import are relied on as showing that the evidence was insufficient to justify the verdict. The evidence was, that Kahn not only told the members of the firm and the book-keeper of the gift, but he told his wife, and he also told Levi Strauss; and the circumstance of alleged variance with the expressed purpose of the will is met by the evidence that Gasquet at first desired to change it so as to make provision for Kahn, in lieu of which he finally determined to give him the check. The evidence is uncontradicted, and comes from an entirely disinterested source, that Gasquet was of perfectly sound mind when he gave the check and until his death. There is no evidence of fraud or undue influence in any way impeaching the action or motives of Kahn. The jury had all the evidence before it, and with its conclusions we cannot interfere.

Appellants claim that there is a presumption, arising under the proven circumstances, that the check was given for the use of the drawer; citing *White* v. *Warren,* 120 Cal. 322. The case cited was that of a husband claiming that the money alleged to have been loaned him by his wife was in fact a gift, and the court said, when the husband introduced evidence of gift, " the presumption of law immediately arose that the gift was obtained from the wife by the exercise of undue influence upon his part," and cast the burden on him of disproving the presumption. The decision rested on certain provisions of the Civil Code, and on the advantage gained by the husband in the particular transaction in question. The court said: "It is only in those transactions where one secures an advantage over the other that the confidential relation existing between them may be invoked, and the equitable principles laid down in the

chapter of the code upon trusts be called into operation." But there was nothing in the present case from which a relation of trust and confidence may be said to have existed between Kahn and Gasquet at the time. The relation was neither more nor less than that of warm personal friendship, and there can be no presumption, under the facts in this case, that the check was given to Kahn for the use of the drawer; besides, there was evidence directly against any such presumption, and sufficient to overcome it if such a presumption arose.

It is claimed by appellants that while the court properly instructed the jury that the burden of showing that the check was executed by Gasquet, and that the gift was in fact made as claimed by defendants, nevertheless the court erred in giving another instruction, from which the jury could assume that by the mere signing and execution of the check the gift was in fact made. The instruction complained of was as follows: —

"If you should find that Gasquet executed and delivered to the defendant Kahn the check in question, then you are further instructed that if Gasquet, at that time, was mentally sound, and that there was no fraud or undue influence exercised by the defendant Kahn in this matter, the gift should not be set aside, although it might be considered highly improvident, and although a mere stranger was the recipient of the donor's bounty."

Standing alone, this instruction might perhaps have conveyed the impression that signing and delivering the check completed the gift, which certainly would not have been sufficient, for it might have been delivered for some different purpose. But in the same connection, and immediately preceding this part of the instructions, the court instructed the jury as follows: "The defendant thereupon claiming, as he does, a gift, it became his duty to establish a gift, to your satisfaction, by satisfactory evidence. If, in your opinion, you find that that signature was genuine, that the check was delivered to defendant Kahn, and that the gift was in fact made, then the burden of proof, and the duty of showing that the gift was obtained through fraud or undue influence, rests upon the plaintiff, because the law, unless in cases of confidential relations,— which are not here presented,—does not presume fraud and does not presume undue influence; therefore, in such case, the party who asserts fraud or the party who asserts undue influ-

ence has to prove it." The court, in other instructions, gave
emphasis to the fact that the burden was on defendants to
prove that a gift had been made. In an instruction the court
said: "The evidence must be clear and satisfactory to your
minds that a gift was intended by Horace Gasquet." Again,
"You must be satisfied that the alleged gift is clearly estab-
lished by a preponderance of the evidence, or you must find
for the plaintiff." We do not think the jury was left in any
doubt as to the meaning of the court that defendants were re-
quired not only to prove delivery of the executed check to
Kahn, but also to prove that when delivered it was intended
as a gift.

We do not feel called upon to notice the line of cases cited
in which fiduciary and confidential relations were shown to
exist, and where the courts have held that the burden of prov-
ing independent advice to the donor was cast upon the donee.
Here there were no fiduciary or confidential relations proven,
and appellants' counsel admit in their brief that the relations
of Kahn and Gasquet were "not what are called technical con-
fidential relations,—that is, such relations as are declared by
law to be confidential."

It is also claimed that whether the relations between Kahn
and Gasquet were confidential and fiduciary was a question of
fact for the jury, and that it was error for the court to instruct
as matter of law that there were no such relations. It is
claimed "that the court should have instructed the jury that
if they believed the relations of the parties were confidential,
the burden of rebutting the presumption of fraud and undue
influence was upon defendants."

Whether the facts showed such a fiduciary relation as would
cast the burden of proof upon the donee to overcome a pre-
sumption of fraud and undue influence which would arise from
such relation, was exclusively within the province of the court.
The facts given, it was for the court to say whether they made
out what in law would constitute a relation of trust and confi-
dence; such relation, for example, as in *White* v. *Warren, supra,*
warranted the court in saying that when the husband proved
a gift, and no more, that he "rested too soon"; adding, "Such
evidence, standing alone, compassed his defeat; for by reason
of that evidence the presumption of undue influence arrayed
itself against him."

The question of fraud and undue influence is not directly

raised by the pleadings, and there is no evidence addressed to such an issue. The question arises, if at all, by the presumption on which appellants now rely, and from which they seek to cast upon defendants the burden of showing that there was neither fraud nor undue influence. Appellants' position cannot be maintained.

The order is affirmed.