[S. F. No. 11964. In Bank.—November 18, 1927.]

In the Matter of the Estate of ANGIOLA BACIGALUPI, Deceased. LINO ARATA, Appellant, v. DIONISIO CANALE et al., Respondents.

**[1]** ESTATES OF DECEASED PERSONS — WILLS — EXECUTION OF DIFFERENT WILLS—CONTINUITY OF PURPOSE—TESTAMENTARY CAPACITY. The fact that the final will of a testatrix showed as to its dispositions a continuity of purpose running through all of her

-------

1. See 26 Cal. Jur. 657.

former testaments, and indicated a settled intent to distribute her property among her numerous relations according to needs and claims of each upon her bounty, is entitled to much weight in determining whether or not the testatrix was in possession of a disposing mind in making her final bequests.

[2] ID.— WILL CONTEST — UNDUE INFLUENCE — CONFIDENTIAL RELATIONS. — One who is a devisee jointly with a relative of the decedent of the *residuum* of the latter's estate (which devise contains precatory suggestions which may be more of a burden than a benefit to the donees) although an old and trusted friend of both the decedent and her predeceased husband, does not come within the category of those who, by virtue of their relationship to a donor of property by deed or will, are held to occupy a confidential relation which in and of itself would raise the presumption of undue influence in the execution of the will.

[3] ID.—EXECUTION OF WILL — SECURING OF ATTORNEY. — The fact that an old and trusted friend of the decedent who was one of the devisees under her will, provided for the deceased in the execution of her last will an attorney who had in other years acted for him as his attorney, but had not engaged in any substantial business for him at the time of the services, does not raise any inference that the attorney was acting in the interests of such friend, rather than for the testatrix.

---

(1) 40 Cyc., p. 1023, n. 29, p. 1027, n. 64.    (2) 40 Cyc., p. 1151, n. 96, p. 1168, n. 6.    (3) 40 Cyc., p. 1165, n. 87.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge. Affirmed.

The facts are stated in the opinion of the court.

Herbert P. Welch, W. H. Morrissey, P. B. Lynch and Brobeck, Phleger & Harrison for Appellant.

W. W. Sanderson for Respondents.

RICHARDS, J.—This is an appeal from a judgment of nonsuit upon the trial of a contest of the last will and testament of Angiola Bacigalupi, deceased. The contest of said will was instituted by Lino Arata, one of the nephews

2.  See 26 Cal. Jur. 652, 654; 28 R. C. L. 146.
3.  See 26 Cal. Jur. 726-831.

and heirs at law of said decedent, in the form of a petition to revoke the said will of the decedent which had theretofore been admitted to probate. The contestant in his petition presented five grounds of contest: (1) That the instrument was a forged and pretended will. This ground was abandoned at the trial. (2) That the testatrix was of unsound mind at the time of the making and execution of her said will. (3) That the will was not legally executed. This ground has been abandoned upon this appeal. (4) That the will was the result of undue influence exercised over the testatrix by Antonio Nardini and Vittoria Canale, two of the beneficiaries under said will. (5) That the residuary clause in said will was void for certain alleged reasons affecting the precatory trust provisions thereof. This ground of contest was withdrawn upon demurrer to said petition. The only two remaining grounds of contest urged upon the trial and upon this appeal were those of unsoundness of mind and undue influence.

Angiola Bacigalupi was a native of Italy, but came to California when a girl, and, marrying, lived in this state with her husband, Theodore Bacigalupi, for many years. Her husband died in the year 1915, leaving a considerable amount of community property to his widow and which constituted her estate at the time of her death, in March, 1924, at the age of seventy-four years. Her children had died in infancy and her surviving relatives consisted of an aged sister, since deceased, who lived in Italy; another sister who was an inmate of the Stockton hospital for the insane, three children of her deceased sister Catherine De Martini, and eight children and grandchildren of her deceased sister Mary Arata. The contestant, her nephew, was one of the sons of the last-named sister of the testatrix. Practically all of the foregoing relatives or the families of them were mentioned by name and remembered in the aforesaid last will of the decedent. Angiola Bacigalupi had made and executed four wills since the death of her husband, in 1915, one on April 4, 1916; one on April 10, 1919; one on January 12, 1922; and lastly the will under view, on December 10, 1923, all of which wills are embodied in the record upon this appeal. Each of the first three of these wills was prepared under her direction by W. W. Sanderson, Esq., who appears herein as the attorney of record for

the respondents, and who also appeared and testified as a witness herein. The last of said wills was drawn by Joseph Cavagnaro, Esq., an Italian attorney of this city, whose standing at the bar and in public repute will hereinafter be adverted to. These four wills of the decedent were before the trial court, and the circumstances under which the first three of the decedent's said wills were drawn and the contents of each of these doubtless influenced in a large measure its conclusion in upholding the fourth and last will. In each of the three former wills of the decedent, drawn under her direction, and when she was unquestionably of sound and disposing mind, and when it is not pretended with any show of reason that she was acting under undue influence, she displayed the same general purpose to distribute equitably her estate among her relatives which was evinced as the chief object of her last testament. A comparison of these several wills discloses the fact that while different dispositions are made of portions of the testatrix's property to this or that one of her relatives, the families of these relatives share with quite remarkable equality in the properties or moneys directed to be distributed among them, or to particular members of them, by the terms of these several testaments. After the death of her husband, in the year 1915, and her succession to the common property of each, Mrs. Bacigalupi continued to reside in the family home at Union and Jones Streets, in San Francisco. Her household consisted of her niece, Vittoria Canale, and one Antonio Nardini, who was, as it appears, an old friend of her husband and herself, a fellow-countryman who had known them both intimately for half a century and who had come to occupy their home with them in about the year 1906, after the earthquake and fire. While the evidence discloses the fact that from time to time in the management of her considerable properties after the death of her husband she consulted and advised with Mr. Nardini, there is no evidence in the record that he exercised or attempted to exercise any influence whatever, and assuredly no undue influence, over her mind or purposes in the making of the first three of her several wills; nor is there any evidence whatever tending in any degree to show that the niece of Mrs. Bacigalupi, Vittoria Canale, exercised or attempted to exercise any such influ-

ence affecting the action or purposes of her aunt in the dispositions of her three former wills, except for the single fact that Vittoria Canale and her family were bequeathed a larger share in the estate of Mrs. Bacigalupi than were other members of the several families which were numbered among the latter's relatives, and this may be fully accounted for by the fact, as abundantly shown by the evidence, that it was Vittoria Canale who devoted herself to ministering to the personal needs and growing infirmities of her aunt as she approached the close of her life. During her later years Mrs. Bacigalupi had become much affected with that chronic malady known as Bright's disease, and which was finally the cause of her death. During the year 1923 she had become almost if not entirely blind (this being one of the effects of that disorder), and had come to realize that her end was near. It was while thus affected and within about four months of her death that the final will was drawn and executed; and it was out of the circumstances coincident with her growing infirmities and particularly those immediately attending the drafting and execution of her final will that the contestant herein has evoked the evidence upon which he relies to sustain his contest of that will. His remaining grounds of contest are two: First, that of the testatrix's unsoundness of mind at the time of the execution of her said last will; second, that of the undue influence exerted over her by her niece, Vittoria Canale, and by her lifelong friend, Antonio Nardini. As to the first of these grounds of contest, we do not deem it necessary to review in anything of detail the evidence educed on behalf of the contestant. That this evidence shows that the testatrix was old and feeble and afflicted by her fatal disorder and its growing infirmities may be conceded; but a careful review of the evidence presented on behalf of the contestant shows no more; but on the contrary discloses that for a person in her blind and afflicted condition the testatrix exhibited a knowledge not only of her own properties and affairs, but a familiarity with the affairs and conditions of her numerous relatives entirely incompatible with any such a degree of mental incapacity as would serve to sustain a contest of her will upon that ground. [1] The fact that her final will showed as to its dispositions a continuity of purpose

running through all of her former testaments, and indicating a settled intent to distribute her property among her numerous relations according to the needs and claims of each upon her bounty, is entitled to much weight in determining whether or not the testatrix was in possession of a disposing mind in making her final bequests. (*Estate of Perkins,* 195 Cal. 699, 708 [235 Pac. 45]; *Estate of Shay,* 196 Cal. 355, 364 [237 Pac. 1079].) This conclusion has especial significance when the fact is noted that it is against the clauses in said will wherein Vittoria Canale, the niece of the testatrix, is devised a larger and more valuable share of her aunt's estate than is given to others of her relatives of the same degree that this contest is directed. In that regard each of the four wills of the decedent manifest a settled purpose to bestow upon Vittoria Canale or her immediate family the very properties willed to her or them by the decedent's final testament; while as to the residuary clauses in the decedent's final will these only differ from the residuary clauses of the first will of the testatrix executed in the year 1916, in the fact that Antonio Nardini is in the last will joined with the son of Vittoria Canale in the bequests thereof, subject to the precatory suggestions of the giver as to the uses to be made of the properties embraced in said residuary bequest. We dismiss, therefore, without further comment the charge of mental unsoundness in approving the ruling of the trial court upon this ground of contest.

[2] The second ground of contest, to wit, the ground of undue influence of Vittoria Canale and Antonio Nardini, we regard as equally without merit. As to Vittoria Canale, it may be stated without recapitulation of the evidence that by the terms of the decedent's last will she is to receive a lesser amount of the testatrix's estate than that accorded her by the provisions of the former wills, and it is difficult, therefore, to perceive how her influence over the final purposes of the testatrix producing that result could be held to be either controlling or undue. This without regard to the utter flimsiness and lack of substance of the evidence of the contestant in attributing an evil motive to the ministrations of this faithful attendant upon the testatrix in her last helpless and afflicted years. As to the contestant's evidence touching the alleged undue

influence of Antonio Nardini over the mind and purposes of the testatrix in the making of her final will, it should be noted that Antonio Nardini, though an old and trusted friend of both Angiola Bacigalupi and her deceased husband, does not come within the category of those who, by virtue of their relationship to a donor of property by deed or will, are held to occupy such a confidential relation, which in and of itself would raise the presumption of undue influence. (*Frantz* v. *Porter,* 132 Cal. 49 [64 Pac. 92]; *Estate of Relph,* 192 Cal. 452 [221 Pac. 361]; *Estate of Hinde,* 200 Cal. 710 [254 Pac. 561].) The evidence which the contestant offered in support of his claim of undue influence on the part of Antonio Nardini was almost wholly confined to the acts and conduct of Nardini in procuring the attendance upon Mrs. Bacigalupi of the attorney who prepared her final will. It is the claim of the contestant that in the procurement of the attorney in question to advise the former as to the terms of her will and to draw and bring about the execution thereof, Nardini was providing his attorney, who would act as such and not as Mrs. Bacigalupi's independent legal advisor in connection with the making and execution of said will. The evidence utterly fails to sustain this contention. Mr. Joseph Cavagnaro was the attorney whose services were thus enlisted. Mr. Cavagnaro was and is an Italian attorney and counsellor at law of many years practice in the city of San Francisco, and is admittedly a lawyer of high character and held in much esteem among the people of his own nationality in said city. He had known and doubtless been known by Mrs. Bacigalupi for a quarter of a century. [3] He had in other years acted for Mr. Nardini as his attorney, but was not engaged in any substantial business for him at the time his services were sought to draw the final will of Mrs. Bacigalupi; and no inference arises from the fact that he was so sought by Mr. Nardini that in so acting he was acting as Nardini's attorney. On the contrary, the undisputed evidence in the case shows beyond any serious question that Mr. Cavagnaro acted as the attorney and counsellor of his client, Mrs. Bacigalupi, in the preparation and execution of her final will, and that in so doing he acted with scrupulous regard to the wishes of said client in the performance of his professional duties and

without the slightest suggestion touching the interest of Mr. Nardini in the premises. We therefore acquit Mr. Cavagnaro of any disloyalty to his client, Mrs. Bacigalupi, in the making and execution of her final will, and in so doing also acquit Mr. Nardini of the charge of undue influence in supplying the testatrix with a skillful and faithful legal advisor. But aside from this contention, the case of the contestant completely breaks down when we come to consider the provisions of the decedent's will relating to the bequest to Mr. Nardini. By the residuary clause of the decedent's last will Antonio Nardini is not for the first time named as a beneficiary of the testatrix's bounty, since by the terms of the decedent's third will, executed in January, 1922, the *residuum* of her estate was bequeathed to the joint ownership of Nicolas Canale, son of Vittoria Canale, and Antonio Nardini, or to the survivor of them; and the final will of said deceased differs from this former will only in the greater particularity with which the precatory suggestions accompanying the bequest are set forth in the final will. When the residuary clause in the decedent's final will is considered in the light of her three former wills, the striking fact is disclosed that the decedent's purpose in so disposing of the *residuum* of her estate was to provide a fund which would be available for distribution among members of her family who might be in need of relief at any future time and until the fund was exhausted. The first will of the decedent in giving the *residuum* to Vittoria Canale contained this precatory provision in abbreviated form; the second will varied its bequest, but retained its essential purpose; the third will returned to the substantial restatement of the terms of the first will in the foregoing regard, except that Nicolas Canale and Antonio Nardini were substituted for Vittoria Canale as the subjects of its benefit and burden. The fourth and last will further amplified the terms of the bequest, but did not change either its beneficiaries or its essential nature. The amount of property which would fall into this *residuum* varied under these several wills, and with reasons appearing for such variation which the contestant herein is in no position to criticise; but the substantial value of the *residuum* did not materially vary, nor did it constitute more than a minor portion of the dece-

dent's estate. The main property which was left in this *residuum* by the decedent's final will was a piece of so-called "oil land" in Kern County, of doubtful value, because of the fact that no oil has as yet been sought for or found therein. The claim of the contestant that Antonio Nardini's undue influence over the mind and action of the testatrix in making him a beneficiary of this bequest in the testatrix's final will is reduced to a minimum when it is found to be a substantial repetition of the like bequest in a former will, but it reaches the point of absurdity when two other facts indisputably appear. The first of these is the fact that the bequest is coupled with a precatory suggestion with relation to the disposition of this *residuum* which, while it does not amount to a trust, lays a moral obligation upon the donees which would, if fulfilled, render it more of a burden than a blessing, and with respect to which there is not a semblance of showing in this case that the donees will not fulfill. The relation of friendship unbroken through many years between Antonio Nardini and the testatrix and her predeceased husband, and apparently justified by his character; the relationship of blood existing between the testatrix and the other recipient in a co-ownership with Nardini of this donation, forbid the inference either that Nardini would prove faithless to the moral duty accompanying this residuary bequest or that he would be permitted to do so, even were he so minded, by Nicolas Canale, his co-owner therein, and without whose consent any breach of the precatory obligation would be impossible. Finally, the fact that Nardini was at the time of the making of this will of the age of seventy-six years or over, while his co-owner in the bequest is or was of about the age of twenty-four, and will in all human probability in a short while at most be his survivor, renders impossible of conception the idea that Antonio Nardini would have engaged himself in the exercise of undue influence over the mind and will of the testatrix with the foregoing results in view. We are compelled from a reading of this entire record to the conclusion that the contestant's case at the close of his showing in support thereof had entirely failed in showing any substantial or even reasonable grounds of contest, and hence that the order of the trial court in granting the motion

for a nonsuit was fully justified by the state of the evidence educed by the contestant himself.

The judgment, based upon such order, is therefore affirmed.

Seawell, J., Shenk, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.