[Civ. No. 15405.   Second Dist., Div. Two.   Dec. 31, 1946.]

KATHLEEN HAUSFELDER, Respondent, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, as Executor, etc., et al., Appellants.

Meserve, Mumper & Hughes, John A. White, Walker, Adams & Duque, A. Andrew Hauk and Henry Duque for Appellants.

William R. Gallagher and John J. Dillon for Respondent.

MOORE, P. J.—Plaintiff sued the executor and the wife and children of decedent Joe A. Hausfelder for possession of and title to the contents of safe deposit box 423 in the office of the Hollywood Escrow and Safe Deposit Company. After a dismissal on May 21, 1945, of the action as to the legal heirs and wife, the latter filed her complaint in inter-

vention in which she asserted that the property in box 423 was a part of the community estate of herself and decedent; that she is entitled to one-half thereof as the community's survivor; and that the court should determine the actual controversy between her and plaintiff. In the same pleading the children as beneficiaries under the last will and testament assert their right to the estate of their father including all the property claimed by plaintiff, and to all issues and profits thereof. After a trial lasting about three days and the examination of 13 witnesses the court below made and entered judgment in favor of plaintiff from which comes this appeal.

Decedent executed his last will and testament on June 12, 1944, whereby he bequeathed his estate in the main to his children. He departed this life November 2, 1944, and his will was admitted to probate on January 3, 1945, when the defendant bank qualified as executor. But prior to the publication of his will decedent had at his own suggestion on April 9, 1943, joined plaintiff in the execution of a lease of the safe deposit box. Such lease contained the words "as joint tenants" stamped thereon and contained the provision that "all property of every kind at any time heretofore or hereafter placed in said box is the property of said lessees as joint tenants and upon the death of any of them passes to the survivors or survivor."

■ The first assignment is that there is no evidential support for the finding that decedent consented to the deposit of his securities in box 423. While it is true that respondent had continuously used the same box for her private purposes subsequent to April, 1941, and that it contained some of her own papers as well as stocks and bonds of decedent, which she had kept as a courtesy to him, at the time they joined in the rental agreement, yet the record discloses definite items of evidence which with the reasonable inferences therefrom would warrant the finding that decedent not only had knowledge that he had signed a joint tenancy agreement with an appreciation of its significance but also that he directed respondent to place certain securities in the box on February 9, 1944. The bank clerk who attended to the safe deposit box rentals testified that it was the custom to stamp the words "as joint tenants" on the lease forms only when such a contract was requested by the parties; that if decedent and respondent had not asked for the joint tenancy agreement the clerk would have suggested a different form.

As to the only deposit made after the lease, respondent had custody of those securities prior to her locking them in the deposit box. The witness Joplin testified that he saw decedent deliver to respondent a number of securities on a day early in 1944, which she placed in a brief case and "she was supposed to return them to the bank." In view of decedent's business acumen, his keen intelligence, his self-opinionated nature and his experience in renting safe deposit boxes the court was warranted in deducing decedent's serious intention of making the rental contract in joint tenancy and his definite purpose of placing his securities in the box.

The background of the box rental will further justify the inferences drawn by the court. Decedent had married Ruth in December, 1918. Three children, issue of that marriage, are the other interveners. The couple were separated in 1923. While their property settlement agreement was not in evidence, proof was adduced to satisfy the court that the abandoned wife had disclaimed all interest in the property thereafter to be gained by her spouse. The lawyer who had negotiated on behalf of decedent testified that an agreement was executed by the parties early in 1924; that pursuant thereto decedent conveyed to Ruth by grant deed as her sole and separate estate a house in the city of Brawley, which with other properties she accepted in full settlement of all her rights in their community estate and of her claims for maintenance and support, while she, in consideration for such assets as she received, waived any and all claims or interest in or to any property that her husband might thereafter acquire. The lawyer recalled distinctly the provisions of the agreement which awarded custody of the three children to the mother and required their support by the father and which "constituted a full and complete property settlement agreement between them; that any property acquired by the parties was to be the separate property of the party so acquiring it." Such testimony was corroborated by the facts (1) that the deed was duly recorded and (2) that the wife never demanded of or received from her husband any support although she knew of his location and two of her daughters worked for him. Ruth denied that she had ever made a settlement with her husband, but such facts and the implications thereof indicate an absence of desire on the part of decedent to leave any part of his estate to Ruth Miller Hausfelder.

While decedent was never divorced from Ruth he later celebrated two marriages, first to Nellie who did not long survive, later to respondent Kathleen, May 17, 1930. After the latter event respondent continued to work for and with decedent in the operation of a distilled water company. Although they were divorced in 1938 and thereafter lived separate and apart, yet she remained in her same position till February, 1943, when he made her a present of the distilled water business and delivered to her a bill of sale thereof. Hardly two months elapsed after that gift until he joined with her in executing the joint tenancy lease of the safe deposit box.

From the events recited it must appear to the most skeptical that the trial court had substantial evidence to support the finding that decedent joined in the lease of box 423 for the purpose of investing respondent with title to such securities as he might cause to be deposited in the box, and that the placing of his stocks and bonds therein was at his request. At most, where two inferences can reasonably be drawn from the evidence the appellate court is powerless to substitute its finding for that of the trier of facts. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Raggio* v. *Mallory*, 10 Cal.2d 723, 725 [76 P.2d 660].)

Appellants invoke the propositions (1) that a confidential relationship existed between respondent and decedent and that this cast the burden upon her to show clearly that she exercised the utmost good faith in her dealings with him at the time he signed the rental agreement as well as on the occasion when he directed respondent to place his securities in the box; (2) that by reason of such confidental relationship respondent held the securities as a trustee. With respect to the latter no evidence is suggested, and we find none to indicate such relation. Respondent had lived with him as his wife five years prior to the joint lease of the lock box. During the five years subsequent to their separation she was his employee and friend. In the absence of a showing of the exercise of undue influence mere friendship does not constitute a confidential relationship. (*Frantz* v. *Porter*, 132 Cal. 49, 54 [64 P. 92]; *Jackson* v. *Gorham*, 98 Cal.App. 112, 116 [276 P. 391].) To sustain the presumption of constructive fraud more is required than mere confidence in another's integrity. (*Meyer* v. *Zuber*, 92 Cal.App. 767, 772 [268 P. 954].) But conceding *arguendo* that it was respondent's

duty to sustain the burden, the facts heretofore recited disclose that decedent was utterly free from the domination of respondent. No fraudulent act on her part appears in the evidence. [4] Finally, a confidential relationship was not pleaded, nor was it advanced as a theory of the interveners at the trial. This fact alone should dispose of that issue. (*Blanc* v. *Connor,* 167 Cal. 719 [141 P. 217] ; *Ernst* v. *Searle,* 218 Cal. 233 [22 P.2d 715] ; *Mathews* v. *Pacific Mutual Life Ins. Co.,* 47 Cal.App.2d 424 [118 P.2d 10] ; *Donze* v. *Donze,* 88 Cal.App. 769, 774 [264 P. 294].) The authorities cited by appellants (*McPhetridge* v. *Smith,* 101 Cal.App. 122 [281 P. 419] ; *Darrow* v. *Robert A. Klein & Co.,* 111 Cal.App. 310 [295 P. 566] ; *Young* v. *Young Holdings Corp., Ltd.,* 27 Cal. App.2d 129 [80 P.2d 723] ; *Schwarting* v. *Artel,* 40 Cal.App. 2d 433 [105 P.2d 380] ; *Herbert* v. *Lankershim,* 9 Cal.2d 409 [71 P.2d 220]) are readily distinguishable. The indifference, neglect or positive action taken by an agent, attorney, or trustee, or the dealing by any one of them with a person who reposes all his confidence and thereby gains an advantage, is not to be confused with the behavior of a friend who serves another at his request and in a respect indicated. In the Lankershim case Miss Herbert exercised her forceful mind upon Lankershim who had entered "a state of progressive mental and physical disintegration," and made false representations to him. In the Young case the defendants were convicted of actual fraud. In the Schwarting case the defendant as agent took advantage of his principal who resided in Missouri and made a secret profit. The Darrow and McPhetridge judgments were against faithless confidential agents.

The arguments that if decedent had intended to make a gift of his securities to respondent he would have put her name on them, that he would have told her in clear and unmistakable terms that they were to be hers at his death, and that he would not have made a will bequeathing his property to his children after signing the rental contract for the safe deposit box, were properly to be presented to the trial court. Even if they were not argued there the experienced and learned judge had the advantage of having heard all the evidence and was qualified to draw reasonable inferences. Such deductions constitute the findings which cannot be upset when supported.

The implication which appellants assert, that respondent held the contents of the box as a trustee, is not based

upon legal logic but upon the theory that the effect of the joint tenancy agreement was destroyed by the asserted confidential relationship. A trust cannot come into being out of thin air. For a trust to exist there must be a specific purpose, a designated beneficiary and duties of the trustee specified by the trustor. (*Estate of Gaines*, 15 Cal.2d 255, 265 [100 P.2d 1055].) There is no evidence herein from which any of these elements may be inferred. The only writing to which both respondent and decedent were signatories was the box rental lease. It contains nothing that would constitute the basis of a trust but on the contrary verily defeats the suggestion.

That a joint tenancy was created by the contract for the lease of the safe deposit box is readily demonstrable. It is the law that a joint tenancy card signed by the parties with reference to a safe deposit box is in the absence of fraud or mistake sufficient to create a joint tenancy securing to the survivor ownership of an entire estate in the contents of the box. (*Estate of Gaines, supra*, 260; *Wallace* v. *Riley*, 23 Cal. App.2d 654 [74 P.2d 800]; *Estate of Fritz*, 130 Cal.App. 725, 729 [20 P.2d 361]; *Young* v. *Young*, 126 Cal.App. 306, 313 [14 P.2d 580].)

Appellants' attempt to establish the nullity of the contract because of the asserted intoxication of decedent at the time of his execution thereof was rejected by the court's finding that he "executed this joint tenancy agreement voluntarily and of his own free will and with full and complete understanding of its meaning, purport and effect, and that he did not sign the same while so influenced by intoxicating liquors that he was unaware of his act and its full consequence and effect." The wife having waived all rights to such property as her husband might acquire, there remained no restriction upon the latter to alienate his property by gift or by contract. In their attempt to prevail against the court's finding appellants assume that the funds with which decedent acquired the securities in the safe deposit box were community property of himself and Ruth and cite authorities (*Tomaier* v. *Tomaier*, 23 Cal.2d 754, 758 [146 P.2d 905]; *Delanoy* v. *Delanoy*, 216 Cal. 23 [13 P.2d 513]; *Siberell* v. *Siberell*, 214 Cal. 767 [7 P.2d 1003]) to show that a joint tenancy could not exist in property in which the interest and title therein is not equal and coextensive between the alleged joint tenants. The cited authorities are in point only with respect to an imaginary situation and do not apply to the

facts found. Having no legal inhibitions against his transfers of property the decedent was free to give respondent either an entire estate or an estate in joint tenancy with himself. ■ The Uniform Stock Transfer Act (Civ. Code, § 330 et seq.) does not forbid gifts of corporate shares by the registered owner. The rights of the parties to such a gift as between themselves are the same as the gift of any other movable property. (*Crane* v. *Reardon,* 217 Cal. 531, 532. [20 P.2d 49]; *Wilson* v. *Crocker First National Bank,* 12 Cal.App.2d 627, 630 [55 P.2d 1208]; *In re Antkowski's Estate,* 286 Ill. App. 184 [3 N.E.2d 132]; *In re Connell's Estate,* 282 Pa. 555 [128 A. 503, 38 A.L.R. 1362].) The Civil Code sections were designed for the protection of corporations. But where the right and title of a donee of corporate securities have been established by judicial decree the statute is not applicable.·

■ The further argument that surrender of all dominion over the contents of box 423 was indispensable to a completed gift is met by the fact that the gift to respondent was not a verbal gift but was effected by an instrument in writing. In such event the gift is complete upon delivery of the writing. (*Francoeur* v. *Beatty,* 170 Cal. 740, 745 [151 P. 123]; *Driscoll* v. *Driscoll,* 143 Cal. 528 [77 P. 471].) The only party who may question a gift not delivered is a creditor in whose behalf there is a presumption of a fraudulent transfer. (Civ. Code, § 3440.) In the cases cited by appellants (*Mutual Benefit Life Insurance Co.* v. *Clark,* 81 Cal.App. 546 [254 P. 306]; *Lord* v. *Katz,* 54 Cal.App.2d 363 [128 P.2d 907]) there was neither a writing to evidence the transfer to the alleged donees nor delivery of the documents claimed.

■ Some of the contents of the safe deposit box are United States Government Savings Bonds, Series D. The regulations (31 U.S.C.A. 757) governing the transfer of such bonds require (1) that the names and complete post office address of the owners and designated beneficiaries to such bonds be inscribed thereon at the time of issue; (2) that such bond be not transferable. (Treasury Department Circular 596, §§ 3 and 4.) Circular number 530 provides that "the form of registration used should express the actual ownership of and interest in the bond and . . . the Treasury Department reserves the right to treat as conclusive the ownership of and interest in the bond expressed in the registration." Such "bond is not transferable and is payable only to the owner named thereon except in the case of disability or death

of the owner . . ." The regulation provides for the payment or reissue of the bond upon the death of the owner to the "person found entitled thereto through judicial proceedings . . . "; provided, however, that no such proceedings will be recognized "if they would give effect to an attempted voluntary transfer *inter vivos* of the bond" or would defeat or impair the rights of' survivorship conferred by the regulations upon coowners and beneficiaries. (*Marshall* v. *Felker*, 156 Fla. 476 [23 So.2d 555, 161 A.L.R. 167]. See §§ 315.17; 315.51 of Regulations.) While appellants contend that the judgment varies the contract between decedent and the government and renders the regulations ineffective, yet it is quite clear (1) that the rules have not been violated in any respect, (2) that respondent's ownership has been established by the instant proceeding and (3) that her sole ownership was not acquired by a "voluntary transfer *inter vivos*" but only by virtue of the decease of Mr. Hausfelder. There was not even an attempt to effect a completed transfer during decedent's lifetime. The claim of no coowner or beneficiary is here involved. The only parties concerned are the donor and the donee and there is no provision of the regulations forbidding the gift of a bond by the owner. (*Marshall* v. *Felker, supra; Blair* v. *Kirchner*, 319 Ill.App. 348 [49 N.E.2d 292].) The provisions restrictive of the transfer of a bond by the registered owner are no longer applicable when such owner has deceased. They could have applied only in a contest between the government and the owner. Upon the death of the owner title vests in such heir, devisee, or surviving joint tenant as may be determined by the appropriate court. *Davies* v. *Beach*, 74 Cal.App.2d 304 [168 P.2d 452], is distinguished by the fact that a beneficiary was designated in the bonds and no decree authorized the transfer to another.

Judgment affirmed.

Wilson, J., concurred.

A petition for a rehearing was denied January 22, 1947.