[Civ. No. 18370. Second Dist., Div. Two. Oct. 24, 1951.]

Estate of WILLIAM S. HART, Deceased. WILLIAM S. HART, JR., Appellant, v. THOMAS C. GOULD et al., Respondents.

Freston & Files and Eugene D. Williams for Appellant.

Harold W. Kennedy, County Counsel, John B. Anson, Deputy County Counsel, Spray, Gould & Bowers, Sidney N. Bachtell and B. Dean Clanton for Respondents.

McCOMB, J.—This is an appeal by the son and only child of William S. Hart, deceased, from an adverse judgment following a jury verdict in a will contest.

The evidence being viewed from the standpoint most favorable to the respondents and to sustaining the judgment (*Estate of Isenberg,* 63 Cal.App.2d 214, 216 [2] [146 P.2d 424] ; see, also, cases cited in 6 West's California Digest (1951), Appeal and Error, § 931(1), p. 438), discloses these facts:

Mr. Hart died on June 23, 1946, leaving a will which was executed on September 9, 1944. So far as material here the will made certain specific bequests and contained these provisions:

"SECOND: I further declare that I have but one child, a son by the name of William S. Hart, Jr., who is the issue of my marriage to said Winifred Westover Hart. I have made no provision in this Will for my son for the reason that I have amply provided for him during my lifetime.

"FOURTH: I hereby give, devise and bequeath to the County of Los Angeles, State of California, a body politic and corporate, (hereinafter sometimes referred to as 'the County'), for the uses and purposes, and upon and subject to the conditions, hereinafter set forth, all that certain real and personal property described as follows, to-wit: (description of property).

"A. That the said real and personal property (hereinafter sometimes referred to as the 'Park') shall be forever used and maintained by the County and its successors in interest and estate, exclusively as a public park and pleasure grounds, and for exhibition purposes, for the amusement, recreation, health and pleasure of its inhabitants. That the Park shall be open to public use at all times subject to proper restrictions to be provided by the Board of Supervisors of the County. That a charge or fee shall never be made of the public for admittance to the said premises, provided, however, that the Board of Supervisors may fix and collect a nominal charge for the use of camping facilities located on the Park Property in an amount of approximately the cost of the public utilities likely to be used by the person to be charged.

"B. That the name of said Park shall be established by ordinance to be 'WILLIAM S. HART PARK', and that 'WILLIAM S. HART PARK' shall be continued as the official name and designation of said Park.

"C. That, within twelve months from and after the date of the recordation of the decree of distribution distributing the said property to the County, the County shall

(1) Construct and thereafter maintain at the present loca-

tion of the main entrance to said property a plate on which shall be inscribed in letters of suitable size and character the words 'WILLIAM S. HART PARK'; and, that at a proper location on or adjacent to the Museum Property, place or erect a tablet on which shall be inscribed in letters of suitable size and character the following words:

"This Park has been dedicated
by
WILLIAM S. HART
for the benefit of the American Public
of every race and creed."

There follow then a number of restrictions upon the use of the park estate.

"SEVENTH: All the rest, residue and remainder of my estate of every kind or nature and wheresoever situate, including any property over which I may have any power of appointment, after paying all my just debts, all expenses of my last illness and burial, all estate, inheritance, income and other taxes payable from estate funds, and all administration costs, expenses, fees and commissions, as provided in paragraph Third, I hereby give devise and bequeath and appoint to the County of Los Angeles, IN TRUST, to be added to the property and/or fund hereinabove specified in paragraph Fifth hereof, and to be used and devoted as a part of said property and/or fund and under and subject to the same terms and conditions, and for the same uses and purposes, provided for in said paragraph Fifth. . . . .

"FIFTEENTH: I hereby nominate and appoint Thomas C. Gould and William R. McKay, now judges of the Superior Court of the State of California, in and for the County of Los Angeles, as joint Executors hereof."

This will was admitted to probate July 26, 1946. January 25, 1947, decedent's son filed a petition to revoke the probate of the will. On January 27, 1947, an amended petition was filed on the grounds (1) that decedent did not have the mental capacity to execute a testamentary document, (2) that the will had been procured through undue influence on the testator, and (3) that testator suffered from monomania at the time of the execution of the will.

On February 17, 1949, appellant filed a notice of motion for change of venue upon the ground there was reason to believe an impartial trial could not be had in the county of Los Angeles. This motion was denied.

After various continuances the trial was commenced Janu-

ary 3, 1950, and after a jury had been selected and evidence received the case was duly submitted to the jury on the issues set forth above, which jury returned a verdict on each of the issues against appellant (contestant).

It is to be noted appellant concedes the evidence is sufficient to sustain the findings of the jury.*

*Questions:* First: *Did the trial court commit prejudicial error in denying appellant's motion for a change of venue?*

*No.* The following rules are applicable to the present action:

██ (1) Where an order denying a motion for change of venue is general in its terms and nothing to the contrary appears in the record, it will be assumed on appeal that the trial court based its ruling on the fact contestant had not acted with due diligence. The burden of excusing delays appearing in the record rests upon the moving party. (*Hart* v. *Forgeus,* 184 Cal. 327, 329 [2] et seq. [193 P. 764]; *Votaw* v. *Miller,* 42 Cal.App.2d 676, 677 [1-2] [109 P.2d 719].)

██ (2) Whether the moving party acted with reasonable diligence in presenting a motion for change of venue is a question of fact to be determined by the trial court, and where the record is silent as to the reason for the delays, it will be held that the court has not abused its discretion in denying the motion. (*Hart* v. *Forgeus, supra*; *Votaw* v. *Miller, supra.*)

In the present case appellant filed his motion for change of venue on February 17, 1949. This motion was heard on February 23, 1949, and the trial court made an order in general terms denying the motion. It therefore appears it was approximately two years after the filing of the petition for revocation of the will, and about one year and five months after the date the matter first came on for setting for trial, that appellant made his motion for change of venue.

No explanation appears in the record for this delay in bringing the matter to the attention of the trial court. Therefore under the rules set forth above this court must assume the trial court denied the motion for the reason that appellant had not acted with due diligence.

---

*Page 2, Appellant's Opening Brief, reads in part thus:

"The Reporter's Transcript herein contains in excess of 7800 pages, including the testimony of a very large number of witnesses and a mass of evidence on each side. *The evidence is such that it could furnish a substantial basis for an express or implied finding on either side of any essential issue.*" (Italics added.)

Second: *Did the trial court commit prejudicial error in giving the instructions hereinafter set forth?*

This question must be answered in the negative.

(a) "Monomania is a form of insane delusion. It's a false belief of the existence of something which does not exist but if there is any evidence, however slight or inconclusive which might have a tendency to create the belief or inference, such belief is not an insane delusion or monomania.

"To more fully define monomania, it is a partial insanity or unsound mind as to one or more persons or upon one or more subjects, and soundness as to all others. This does not affect the testamentary capacity in general. In such a case testamentary capacity is admitted only as to the person or subject in regard to which the unsoundness exists.

"In other words, if some portion of a will is a product of monomania, but the rest of the will is not, the will must be upheld except as to that portion which is found to have been the product of monomania in the mind of the testator.

"In this connection I instruct you that monomania may be found only if the belief or opinion has no basis and reason or probability and is without any evidence in its support, but exists without any process or reasoning or is the spontaneous offspring of a perverted imagination and is adhered to against evidence and argument, but if there is any evidence, however slight or inconclusive, which might have a tendency to create a belief, such a belief is not monomania.

"One cannot be said to act under a monomania if his condition results from a belief or inference, however irrational or unfounded, which is drawn from facts which are shown to exist.

"If you should find either that the entire will, or any part thereof, of Mr. Hart, was the result of monomania on his part, then you should so indicate by a special verdict which I am now submitting to you, and it will be handed to your foreman to take to the jury room."

Appellant criticizes the word "admitted" in this statement in the instruction: "In such a case testamentary capacity is *admitted* only as to the person or subject in regard to which the unsoundness exists." The word "admitted" was erroneous and should have been "affected." However, such error is not prejudicial since the error is clarified by the sentence following which reads: "In other words, if some portion of a will is a product of monomania, but the rest of the will is not, the will must be upheld, except as to that portion which is

found to have been the product of monomania in the mind of the testator." It is further clarified by the last statement in the instruction reading thus: "If you should find either that the entire will or any part thereof, of Mr. Hart, was the result of monomania on his part, then you should so indicate by a special verdict which I am now submitting to you. . . ."

██ The rule is established that instructions to the jury must be considered in their entirety and if after such consideration they are correct the court will not reverse a judgment even though an instruction or isolated statements are subject to criticism because of verbal inaccuracies. (*Shapiro v. Equitable Life Assur. Soc.*, 76 Cal.App.2d 75, 95 [34] [172 P.2d 725].)

It is clear in the present case the word "admitted" constitutes merely a verbal inaccuracy which was corrected by more specific parts of the instruction and the jury could not have been misled by the use of the word. The instruction was not prejudicial.

██ (b) "An insane delusion is the unyielding belief of the existence of something which does not exist and the acting upon that belief. Belief of things which are entirely without foundation in fact, and which no sane person would believe, is insane delusion. If a person be under a delusion, though there be but partial insanity, yet if it be in relation to the act in question, it will defeat a will which is the direct offspring of that partial insanity."

Appellant complains this instruction was erroneous for the reason it includes the idea that a belief or opinion to constitute a monomania must be without any basis and reason or probability. This contention is erroneous. The essential element of an insane delusion is that it is created without reason or evidence and is adhered to against reason and evidence. (*Estate of Kendrick*, 130 Cal. 360, 370 [62 P. 605].) The instruction as given was correct.

██ (c) "If, prior to executing his last will, a testator shows a continuity of purpose running through his former wills and codicils which indicates a settled intent or a consistent state of mind on his part as to the manner of distributing his estate, this is entitled to be considered by you in determining whether or not a testator was in possession of a disposing mind, that is, had testamentary capacity and was free from undue influence in making his last will."

This instruction was a correct statement of the law. (*Estate of Bacigalupi*, 202 Cal. 450, 454 [261 P. 470] ; *Estate of Stump*,

202 Cal. 308, 310 [260 P. 543]; *Estate of Perkins*, 195 Cal. 699, 707, 708 [235 P. 45].)

There is likewise no merit in appellant's contention that the foregoing instructions single out certain facts and tend to emphasize them. As stated above the instructions to the jury must be considered in their entirety and as read together. It is presumed that the jury so considered them.

In *Estate of Clark*, 180 Cal. 395 [181 P. 639], a similar instruction was requested to the one here questioned, and was properly refused for the reason it contained this statement: "It does not necessarily follow from these facts and these facts alone that at the time of the alleged execution of the will in question she was of sound mind." The quoted language constituted an argument and since the instruction was argumentative the court properly refused it.

■ (d) "The County of Los Angeles, being by its nature a political subdivision of the State, holds its property on behalf of the public, and the proprietary interest in all such property belongs to the public, and if there be legal title in the County, it is held in trust.

"You are further instructed that the will gives the ranch to the County for the purposes and subject to the conditions set forth in the will."

The giving of this instruction was correct for the reason the will read in part as follows:

"FOURTH: I hereby give, devise and bequeath to the County of Los Angeles, State of California, a body politic and corporate, (hereinafter sometimes referred to as 'the County'), for the uses and purposes, and upon and subject to the conditions, hereinafter set forth, all that certain real and personal property described as follows, to-wit:"

Such instruction was given in response to the argument made to the jury by appellant that the ranch property referred to in the will had been given outright to the County of Los Angeles. The instruction correctly stated the provisions of the will.

■ Third: *Did the trial court commit prejudicial error in refusing to give the following instruction requested by appellant?*

"If William S. Hart was primarily a victim of Monomania, on September 9, 1944, at the time of the execution of the Will; if he entertained an unwarranted, unfounded and unexplained hatred of his former wife, Winifred Westover, which was adhered to against reason and evidence; and that

this feeling not only influenced and colored his later life, but was actively present and operative at the time of the making of the Will; and that, acting under its effect, William S. Hart, was constrained to and actually did disinherit his son, then William S. Hart, at the time of making said Will, was laboring under the effect of an insane delusion, even though he may have appeared to be of sound mind in other matters.''

*No.* The foregoing proposed instruction was erroneous in that it omitted to state the requirements of an insane delusion. Therefore as a formula instruction it was defective and the court properly denied it. In addition the instructions given by the court fully covered the subject matter of this instruction. Therefore there was no error in refusing it. (*Luis* v. *Cavin,* 88 Cal.App.2d 107, 115 [198 P.2d 563].)

Fourth: *Did the trial court commit prejudicial error in submitting to the jury special verdicts numbers 2 and 3?*

*No.* Respondents submitted certain forms of special verdicts to the trial judge. Appellant objected to these special verdicts claiming they required the jury to find on matters of evidence and the correct rule was stated in *Estate of Webster,* 43 Cal.App.2d 6, 16 [110 P.2d 81, 111 P.2d 355]. Appellant therefore requested that certain special verdicts be submitted to the jury. The court complied with appellant's request and submitted the special verdict number 2 as requested by appellant and followed the theory announced in *Estate of Webster, supra,* in verdict number 3. Hence under the rule that parties must abide by the consequences of their own acts and cannot obtain a reversal on appeal for errors which they have committed or invited (*Noble* v. *Miles,* 129 Cal.App. 724, 727 [19 P.2d 265]; see, also, cases cited in 6 West's California Digest (1951), Appeal and Error, § 882(1), p. 246), appellant may not now attack the special verdicts which were submitted to the jury.

Fifth: *Was counsel for respondents guilty of prejudicial misconduct during the course of the argument?*

*No.* Portions of a letter written by appellant were received in evidence while other portions were excluded. During the course of the argument portions of the letter not received in evidence were enlarged and placed on a blackboard in front of the jury, and counsel for respondents referred to the enlargement. To this appellant objected. He now urges it was prejudicial error to permit reference to the portions of the letter not received in evidence.

70

 This objection is not sound for two reasons: (1) Though appellant objected to the argument he did not request the trial court to instruct the jury to disregard it. The rule is established that unless the harmful results of misconduct cannot be obviated by appropriate instructions of the trial court, error cannot be predicated in this court on such alleged misconduct in the absence of (a) assignment of such misconduct as error, and (b) a request to the trial court to instruct the jury to disregard it. (*Delzell* v. *Day,* 36 Cal.2d 349, 351 [223 P.2d 625] ; *Burke* v. *John E. Marshall, Inc.,* 42 Cal. App.2d 195, 208 [108 P.2d 738] ; *Sitkei* v. *Ralphs Grocery Co.,* 25 Cal.App.2d 294, 296 [2] [77 P.2d 311]. See, also, cases cited in 5 West's California Digest (1951), Appeal and Error, § 207, p. 271.)

 (2) The record discloses that without objection appellant was questioned for the purpose of impeaching him relative to portions of the letter which had not been formally received in evidence and the argument to the jury also with reference to this letter was predicated upon the same theory. Since the content of the letter was before the jury without objection of appellant it is clear no prejudice resulted. Under article VI, section 4½ of the Constitution of the State of California any error in this respect must be disregarded on appeal.

Affirmed.

Moore, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 18, 1951. Carter, J., voted for a hearing.