[Civ. No. 27251.    Second Dist., Div. Four.    Oct. 8, 1963.]

Estate of BARTHOLOMEW JOHN CORBETT, Deceased. THERESA McCARREN, Petitioner and Appellant, v. MARGARET KORDELL, Contestant and Respondent.

Martin Jackson and Clair M. Christensen for Petitioner and Appellant.

Roy B. Woolsey for Contestant and Respondent.

BURKE, P. J.—Bartholomew Joseph Corbett died leaving surviving two daughters, Margaret Kordell and Theresa McCarren. He had executed a purported will and codicil on February 23, 1961, which Theresa offered for probate. ■ Margaret objected to their admission, alleging undue influence on the part of Theresa and that the decedent at the time of the execution of the instruments was not of sound and disposing mind. Trial on the merits was had and the court found Margaret's contentions true. Judgment was entered denying probate of the will and codicil from which Theresa appeals.

The decedent's older daughter Margaret had lived with him from about 1947 until 1956. Thereafter the daughters moved to California and their father, suffering from cancer, came from New Jersey in November 1960 to live with his daughter Margaret.

At the trial Margaret testified that on January 8, 1961, Theresa told her father that Margaret was stealing his money; that he should leave Margaret and live with her and her husband. This incident initiated a series of attempts on Theresa's part to induce the father to believe that Margaret was dishonest, most of the controversy being related to the alleged misuse by Margaret of the proceeds of government bonds belonging to the father having a value of $820.25. The father left Margaret and resided with Theresa and on Feburary 23, 1961, signed the purported will and codicil by which he disinherited Margaret because, as he stated in the will, "she has been a great disappointment to me lately." In a prior will, dated December 9, 1960, decedent had bequeathed the bulk of his estate to his daughters equally.

The father had placed the proceeds from his government bonds and $300 in a joint bank account with Margaret. Upon leaving her he demanded the release of such funds, but Margaret, fearing dissipation of the funds, withdrew the money, securing a cashier's check in the name of the father and retaining possession of the $300 in cash. The father filed suit to recover the money. To protect the father, Margaret instituted guardianship proceedings, but the court found the father to be competent. Therereafter, and before further dis-

position of such funds was made by court action, the father died.

On the issue of the substantiality of evidence to support the court's finding of undue influence it was shown that after the death of the testator's spouse he frequently walked to the cemetery and said he was going to talk to her; he had delusions and hallucinations; he heard knocks on the door with no one present; he complained that a woman in white pulled sheets off his bed; he suffered from cancer, underwent surgery, and declined physically; he cashed savings bonds and forgot what he had done with the funds; his memory declined; he believed statements that his daughter Margaret was going to put him in the "crazy house"; and he thought Margaret had put something in his food. Theresa did not adduce any evidence tending to prove that Margaret was dishonest or had stolen any of the father's property.

In *Estate of Yale*, 214 Cal. 115, 122 [4 P.2d 153], the court enumerated the following indicia of undue influence: "(1) The provisions of the will were unnatural...; (2) the dispositions of the will were at variance with the intentions of the decedent, expressed both before and after its execution; (3) the relations existing between the chief beneficiaries and the decedent afforded to the former an opportunity to control the testamentary act; (4) the decedent's mental and physical condition was such as to permit a subversion of his freedom of will; and (5) the chief beneficiaries under the will were active in procuring the instrument to be executed."

In effect, all of these elements were present in the instant case. The credibility of the witnesses and the impact of the evidence is reflected by the following remarks of the court: "... I feel that I would be remiss in my duty as the trial Judge in this case if I did not say that I am unqualifiedly of the firm opinion that the daughter, if she wants to call herself a daughter, let's say an unworthy daughter of the decedent, used every possible means that she could to deprive her sister of what rightfully was hers, that is one-half of the estate. There is no question from the evidence in this case. It is as strong a case of undue influence as this Court has ever listened to ...."

▉ Appellant Theresa contends the court committed prejudicial error in refusing to admit a 1953 will into evidence by which it was intended to show that the decedent had the same intentions prior to the happening of the acts alleged to constitute undue influence, citing *Estate of Stump,*

202 Cal. 308 [260 P. 543], and *Estate of Hart,* 107 Cal. App.2d 60 [236 P.2d 884]. Former wills are admissible to show a continuity of purpose and are entitled to be received in evidence to show that a subsequent will followed the settled intent of the testator. (*Estate of Bacigalupi,* 202 Cal. 450 [261 P. 470].) In this case, however, the 1953 will conflicts rather than concurs with a later will drawn in 1960. Introduced by Margaret without objection, the 1960 will provides that his estate be divided equally between his two daughters, a more natural disposition of his property than that evidenced by either the 1953 will or the 1961 will, which is the one Theresa offered for probate. The authorities, therefore, cited by respondent justifying the admission of prior wills to indicate a "permanent," "settled" or "consistent" state of mind are not applicable here and the court properly rejected such purported evidence. There is no error in the record.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.